FREEMAN, Plaintiff-Appellant, v. NEW YORK CENTRAL RAILROAD CO., Defendant-Appellee.

Ohio Appeals, Tenth District, Franklin County.

No. 6260. Decided September 27, 1960.

308

*Mr. James C. Britt,* for plaintiff-appellant.
*Mr. Melvin M. Belli,* for plaintiff-appellant.
*Messrs. Wilson & Rector* and *Mr. Harrison W. Smith, Jr.,* for defendant-appellee.

(GILLEN, P. J., RADCLIFF and COLLIER, JJ., of the Fourth District, sitting by designation in the Tenth District.)

GILLEN, P. J. Plaintiff-appellant, John W. Freeman, and defendant-appellee, New York Central Railroad Company, will be referred to herein as plaintiff and defendant in the same manner as they appeared in the court below. The action is one for damages for personal injuries sustained by plaintiff in a railway accident.

Plaintiff's petition, filed November 14, 1956, alleges, in part, that the defendant at all times therein set out was doing business in Franklin County, Ohio, as a common carrier by railroad and that said defendant owned, leased and operated over certain tracks and yards in and around Columbus, Ohio; that at 500 North High Street in said city there is a building known as the New York Central Freight Station; that said building is located on the east side of North High Street, that to the rear or east of said building there are four sets of railroad tracks extending in an easterly direction from the easternmost side of said building, the northernmost being near East Swan Street and the southernmost being near a driveway referred to as Terminal Way; that on or about November 20, 1954, at approximately 11.00 P. M., plaintiff entered upon said tracks and was on or near the tracks next to the northernmost when he was found by an agent of defendant; that at said time plaintiff had been drinking intoxicants and was influenced thereby to such an extent that he was unable to exercise his reasoning and judgment faculties; that

said agent of the defendant pushed plaintiff and caused him to trip and fall upon the railroad tracks immediately south of the northernmost tracks, injuring him in such manner that he was unable to remove himself from said railroad tracks prior to the time that a train was run over said tracks by defendant; that a train was run over said tracks striking and running over plaintiff and injuring and damaging him to the extent and in the manner fully described in the petition. Plaintiff says that defendant was negligent in the following particulars:

1. Defendant, by its agents, knew of plaintiff's peril and failed to stop said train prior to running over plaintiff.

2. The defendant, by its agent, failed to remove plaintiff from said tracks.

3. The defendant, by its agents, failed to keep a lookout ahead of the moving train to discover plaintiff when they knew individuals, including plaintiff, were accustomed to being on said tracks.

4. Defendant failed to give any warning signal prior to running the train over said tracks.

Plaintiff asked for damages in the sum of $250,000.00.

At the time the suit was instituted the five railway companies using the tracks described in the petition were made parties defendant and, after certain interrogatories attached to the petition requiring each of the defendants to supply information in regard to the operation of trains at or near the time and place of the accident, the names and addresses of crew members on duty at the time, and other related information, all of the railway companies were dismissed as parties defendant except the New York Central Railroad Company.

The amended answer of the defendant admits certain formal allegations of the petition and the fact that plaintiff, at the time, had been drinking intoxicants and was influenced thereby to such an extent that he was unable to exercise his reasoning and judgment faculties but denies all other allegations. Further answering defendant averred that plaintiff entered upon defendant's railroad tracks, hereinbefore described, without right, authority or permission of defendant and that at said time and place plaintiff was a trespasser on defendant's property and particularly on said tracks; that at said

time and place plaintiff was intoxicated; that if, at the time of the accident defendant was in any wise negligent, all of which it expressly denies, then plaintiff was himself negligent, which negligence contributed to cause any injuries he suffered and which negligence consisted of plaintiff's failure to use any care whatsoever for his own safety.

Plaintiff's reply denied that he was intoxicated at the time of the accident and that he was guilty of any negligence contributing to his injury.

The case was submitted to a jury on the first and second specifications of negligence resulting in a verdict for plaintiff in the sum of $38,345.00.

Defendant's motions for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence were overruled by the trial court. There can be no question but that the trial court properly dismissed the third and fourth specifications of negligence from consideration by the jury.

After the jury verdict judgment for plaintiff on the verdict under Section 2323.15, Revised Code, was filed February 13, 1959. Motion by defendant for judgment notwithstanding the verdict was filed February 16, 1959, which motion was sustained and judgment for defendant was journalized May 6, 1959. Plaintiff filed motion for a new trial under Section 2323.17, Revised Code, May 12, 1959, which motion was overruled July 10, 1959. The notice of appeal reads as follows:

"The plaintiff-appellant, John W. Freeman, hereby gives notice of appeal to the Court of Appeals of Franklin County, Ohio, from the order and judgment of the Court of Common Pleas of Franklin County, Ohio, filed herein on the 10th day of July, 1959, wherein said Court of Common Pleas of Franklin County, Ohio, affirmed its former order sustaining a motion for judgment notwithstanding the verdict of the jury and refused to grant plaintiff a new trial and rendered judgment for the defendant and against plaintiff. Said appeal is on questions of law."

The assigned errors are:

"1. The Court below committed error in sustaining defendant-appellee's motion for judgment in its favor notwithstanding and contrary to the verdict of the jury and entering final judgment for said defendant-appellee.

"A. There were issues of fact to be resolved by a jury concerning the liability for the defendant-appellee to plaintiff-appellant upon the basis of negligence and proximate cause.

"2. The court below committed error in refusing to submit to the jury the issues of fact relative to willful or wanton injury to plaintiff-appellant.

"3. The court below committed error in refusing to admit the testimony of a witness, Mary Morrison.

"4. The court below was guilty of misconduct in being unduly influenced and prejudiced by publicity involving the case.

"5. The court below committed error in its decision relative to admissions and denials contained in the pleadings.

"6. Plaintiff has been denied his constitutional rights."

The notice of appeal is directed to the judgment entry dated July 10, 1959, which was an order overruling plaintiff's motion for a new trial. This order as well as the order granting defendant judgment notwithstanding the verdict were both final orders.

It is urged by counsel for plaintiff that, in passing upon the motion for a new trial, the court below considered all procedural steps theretofore taken in the case including the order granting judgment for defendant notwithstanding the verdict and that, in denying the motion for a new trial, the court reaffirmed its former order of judgment for defendant. Although this claim is set forth in the notice of appeal, the judgment entries in the case do not seem to support the claim. Be that as it may, in our opinion, plaintiff is not entitled to a new trial. The jury verdict favored plaintiff and judgment was entered thereon. The trial court rendered judgment for defendant notwithstanding the verdict. If the trial court was correct in making the order then the case is terminated. Otherwise, it would be necessary to order done what should have been done, i. e., reinstate the verdict and judgment rather than grant a new trial. Section 2505.37, Revised Code, provides:

"When a judgment or final order is reversed, in whole or part, in the Court of Common Pleas, Court of Appeals, or Supreme Court, the reviewing Court shall render such judgment as the court below should have rendered or remand the cause to that court for such judgment."

Although we have considered each of the assigned errors urged by counsel for plaintiff in support of the motion for a new trial, we do not deem it necessary to discuss each of them separately in this opinion in view of the fact that the jury returned a verdict for plaintiff. Under such circumstances, the alleged errors can not be regarded as prejudicial. As indicated above, we are concerned only with the correctness or incorrectness of the court's order granting judgment for defendant notwithstanding the verdict. In this connection the trial judge is charged with misconduct in making the order based upon the claim that he had become irritated by certain newspaper publicity given the case in Newsweek Magazine. This publicity occurred after the jury had been dismissed and before the judge ruled upon the motion for judgment notwithstanding the verdict. During the progress of the trial, as shown by the record, the trial judge was extremely tolerant and patient in an effort to conduct a fair trial in a complex and difficult case. We are here concerned, however, with the correctness of the judgment for defendant notwithstanding the verdict and not with the attitude or reasoning of the trial judge.

The record in this case discloses that late Saturday night, November 20, 1954, plaintiff entered the railroad yards behind the New York Central Freight House and loading docks at the junction of Swan and High Streets where he was run over by a train and severely injured. There were no eye witnesses to the accident. Plaintiff was discovered about noon the following day and taken to White Cross Hospital in a police ambulance. His injuries required the amputation of both legs and a bone fusion to repair a fractured vertabrae. He also suffered a brain concussion, a deep laceration on top of the head, loss of blood, extreme shock and numerous cuts and bruises. Plaintiff was unable to tell how he happened to be in the railroad yards or how the accident happened. The three doctors who administered emergency treatment testified that they smelled a strong odor of alcohol on plaintiff's breath. Three days following the accident, plaintiff made a detailed statement to a representative of defendant company in which he said that he was unable to tell how he got into the railroad yards or how the accident happened. The attending physician

testified that, at the time this statement was made, plaintiff was oriented and not under the influence of a sedative.

In January, 1955, plaintiff was taken to the office of Doctor Maurice B. Rusoff, a psychiatrist, for treatment. He told the doctor that he was unable to recall the events leading up to his accident and requested the doctor to try to restore his memory. The doctor administered a treatment of sodium amytal which placed plaintiff in a hypnotic or semi-conscious state for a period of thirty minutes. During this time the doctor conversed with plaintiff and made a record of the questions and answers. A second treatment of sodium amytal was given October 25, 1956, a few days prior to the filing of plaintiff's petition November 14, 1956, and a third treatment in 1957 after answers to the interrogatories attached to the petition were answered by the various railroad companies. At the trial plaintiff's testimony was based upon his medically refreshed memory.

Doctor Rusoff testified that as a result of plaintiff's severe injuries, loss of blood and shock he suffered from traumatic retrograde amnesia. That in this condition plaintiff's memory was blotted out for a considerable period of time, both before and after the accident. Doctor Dwight M. Palmer and Doctor George T. Harding, two eminent psychiatrists, testified that a person suffering from traumatic retrograde amnesia would have no memory to restore during the period of time of mental blackout since the memory process requires a mental recording of impressions together with the ability to retain and recall same. Doctor Ralph Patterson, a psychiatrist, testifying for plaintiff introduced the theory of psychogenic amnesia. He stated that a person suffering from this type of amnesia would have a spotty memory and that the treatment of sodium amytal might be helpful in refreshing recollection. Doctor Rusoff was the only one of the four psychiatrists who had examined plaintiff. He described the plaintiff's condition as being traumatic retrograde amnesia and not phychogenic amnesia. The medical testimony conclusively establishes the fact that the use of sodium amytal could produce any one of four results, i. e., truth, falsehood, fantasy or response to suggestion. It is apparent that the use of the term 'truth serum,' in describing the drug, is a misnomer.

In passing upon the correctness of the trial court's order granting judgment for defendant notwithstanding the verdict, we are required to consider all of the evidence most favorable to plaintiff even though his testimony be based upon refreshed recollection.

In his testimony plaintiff related, in detail, the events leading up to the time of the accident. Although he attempted to minimize the amount of alcohol he had consumed beginning early Friday evening, November 19, 1954, and continuing until late Saturday evening the following day, his own testimony together with all the evidence in the record establishes beyond the shadow of a doubt that, at the time he entered the railway yards, he was in a state of intoxication. In fact, he alleges in his petition that he had been drinking intoxicants and that he was influenced thereby to such an extent that he was unable to exercise his reasoning and judgment faculties. He had voluntarily placed himself in that condition.

Testifying from his refreshed recollection, he told how he happened to be in the railway yards. He said that, as he was walking down High Street about 10:30 Saturday evening, he met two girls in front of the Union Depot who asked him where they could get something to eat. He accompanied them into the station and pointed out the restaurant. One of the girls purchased some sandwiches and he accompanied them down the flight of stairs and boarded a passenger train. There was considerable hilarity on the train becouse of the football victory of Ohio State over Michigan that afternoon. He remained in the passenger car with the girls a half hour or so when the train moved forward in an easterly direction. When the train slowed down, after passing through the Fourth Street viaduct, he leaped from the front end of the passenger car to the ground and then proceeded to walk back through the viaduct in a westerly direction along the railroad track toward the Union Depot. It was a dark, cloudy night and visibility was poor. When he reached a point near the New York Central Freight House, where the accident occurred, he met a man he claim pushed him. The record is too voluminous to relate, in detail, all of the testimony. Two facts, however, are definitely and conclusively established by plaintiff's evidence; (1) he was intoxicated

to the extent that he was unable to exercise his reasoning and judgment faculties; and (2) he entered the railway yards as a trespasser. In order to meet this situation plaintiff sought to invoke the doctrine of discovered peril as shown by the first and second allegations of negligence set forth in the petition. In support of this theory he testified that, shortly before the accident, he was pushed by a man named ''Wotisky'' who was a conductor in charge of the train crew operating the train which ran over him. After the interrogatories attached to the petition had been answered by defendant, plaintiff discovered that one member of the train crew, the conductor named ''Wotisky,'' had died a short time prior thereto. He located two pictures in which Wotisky appeared and, from those pictures, identified him as the man who did the pushing. According to his testimony the accident occurred sometime between 11:30 and 12:00 o'clock, Saturday night, November 20, 1954, although the evidence shows that the train crew in question did not report for work until 12:30 Sunday morning. He said that, when he met Wotisky near the Freight House, Wotisky asked him what he was doing there and when he told him that he was lost, Wotisky gave him a shove and said, ''This is the way out.'' At that time Wotisky was facing in a westerly direction and plaintiff was facing north. It is clear that if plaintiff had taken a few steps forward he would have been in Swan Street, a place of safety. He admitted that, after the pushing, he advanced toward Wotisky and engaged in some argument because he did not like to be pushed around. He said that Wotisky gave him another shove causing him to trip backwards over the rail spraining his ankle. When he told Wotisky that he was hurt, Wotisky told him to get out or it would be worse and then walked away in an easterly direction. At the trial he said that the pushing incident occurred about one minute and not more than three minutes before the accident although he admitted that, at a previous trial, he testified that it happened about five minutes and not more than ten minutes before the accident. He said that when he felt the vibration of the rails he stood up just as he was struck by the train. There is no evidence to prove that Wotisky knew plaintiff was either intoxicated or injured to the extent that he was unable to exer-

cise care for his own safety. Wotisky had walked away from the scene.

In order to establish the doctrine of discovered peril, it was incumbent upon plaintiff to prove that defendant, acting through its agent, had knowledge or, in the exercise of ordinary care, should have had knowledge of plaintiff's perilous condition at a time when in the exercise of ordinary care it could have avoided the accident. In our opinion the evidence fails to establish that fact. Plaintiff's own testimony proves conclusively not only that he was in a state of intoxication and a trespasser at the time of the accident but also that he failed and neglected to exercise ordinary care for his own safety. It has been said in the case of *Ziebro* v. *City of Cleveland*, 157 Ohio St., 489, 47 Ohio Opinions, 357, that:

"2. In an action involving the negligence of the defendant and contributory negligence of the plaintiff where, giving to every portion of the plaintiff's evidence the most favorable interpretation in favor of the absence of negligence on his part, such evidence under such interpretation is susceptible of no other reasonable inference than that of negligence on his part, directly and proximately contributing to his injury, the question of contributory negligence ceases to be a question of fact for the determination of the jury, and it is the duty of the court in such case to direct a verdict for the defendant."

See also *Lawrence* v. *The Toledo Terminal Rd. Co.*, 154 Ohio St., 335, 43 Ohio Opinions, 241.

The fourth branch of the syllabus in the case of *The New York Central Rd. Co.* v. *Stevens, Admr.*, 126 Ohio St., 395, reads:

"4. In an action for damages for personal injuries, where plaintiff's own testimony will warrant no inference but that his own want of due care contributed proximately to the injury, there can be no recovery, and a motion directing the jury to return a verdict for the defendant should be sustained."

See also *Winkler* v. *City of Columbus*, 149 Ohio St., 39, 36 Ohio Opinions, 364.

In the case at bar, plaintiff's own evidence proves conclusively that he entered upon defendant's property as a trespasser in an intoxicated condition unable to exercise his reasoning and judgment faculties and that he did not exercise ordinary

care for his own safety. This situation continued up to and including the time of the accident. Under such circumstances the trial court properly sustained defendant's motion for judgment notwithstanding the verdict. In our opinion substantial justice has been done in this case. The judgment of the court below will, therefore, be affirmed.

Judgment affirmed.

RADCLIFF and COLLIER, JJ., concur.